IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATALIE M. FISHER,<br>on behalf of plaintiff and a class, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| BP, p.l.c., a public limited company chartered under British law; and<br>BP CORPORATION NORTH AMERICA INC.,<br>an Indiana corporation;<br>and DOES 1-10, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT – CLASS ACTION

## MATTERS RELEVANT TO MULTIPLE CLAIMS

### INTRODUCTION

1.  This is a class action brought by plaintiff on behalf of all consumers who purchased defective gasoline refined by defendants in Northwest Indiana and sold in Illinois, Indiana, Wisconsin and Michigan.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. §1332(d), in that:

    a.  The amount in controversy exceeds $5 million, exclusive of interest and costs. The action concerns thousands of damaged vehicles, with damages of at least several hundred dollars per vehicle.

    b.  Plaintiff is a citizen of Illinois.

    c.  Defendants are an Indiana corporation with its principal place of business in Texas and a British corporation with its principal place of business in the United Kingdom.

    d.  Class members reside in Illinois, Indiana, Wisconsin, and

      Michigan.

    e.  There are over 100 class members.

  3.  Personal jurisdiction over each defendant is proper because each defendant:

    a.  does and has done business in Illinois and within this District, with the claims asserted herein arising from such business; and

    b.  committed tortious acts which are the subject of the complaint in Illinois, and within this District.

  4.  Venue in this District is proper for the same reasons.

## PARTIES

  5.  Plaintiff Natalie M. Fisher is an individual who resides in the Northern District of Illinois.

  6.  Defendant BP, p.l.c. is a British public limited company (corporation) with offices in the United Kingdom.

  7.  Defendant BP Corporation North America Inc., is an Indiana corporation with its principal place of business located at 501 Westlake Park Blvd., Houston, TX 77079. It does business in Illinois. Its registered agent and office is Prentice Hall Corporation, 801 Adlai Stevenson Drive, Springfield, IL 62703.

  8.  Defendant, BP p.l.c., is a public limited company organized under British law with principal offices at 1 St James Square, London, SW1Y 4PD. It is the parent of BP Corporation North America Inc. It does business in the United States through various subsidiaries, including BP Corporation North America Inc. It may be served at 501 Westlake Park Blvd., Houston, TX 77079.

## FACTS RELATING TO PLAINTIFF

  9.  On Thursday, August 16, 2012, plaintiff purchased BP gas for her 2002 GMC Envoy at a BP station located at 135th and Cicero, in Crestwood, Illinois.

10. The gas was contaminated.

11. On Friday, August 17, 2012, plaintiff's engine stalled and emitted smoke.

12. Believing that her car was failing, plaintiff traded it in.

13. Upon seeing news reports of widespread problems with BP gasoline on Monday, August 20, 2012, plaintiff contacted defendants through their website contact page at www.bpresponse.com to inform them of the contaminated gasoline. Plaintiff also sent the letter attached as Exhibit A via email on or about Monday, August 21, 2012.

14. Plaintiff received the automated reply attached as Exhibit B in response to the above communication.

15. Plaintiff also contacted defendants to inform them of the contaminated gasoline via telephone at 800-333-3991 on or about Monday, August 20, 2012.

## FACTS – GENERAL

16. Defendants produce, market and sell BP gasoline. Most of the gasoline is used for personal, family or household purposes.

17. Defendants consistently emphasize the quality and utility of their gasoline. For example, their Web site, which is registered to BP p.l.c., and the administrator of which is BP Corporation North America Inc., states:

> BP US retailing
>
> As the second-largest gasoline marketer in the United States, BP offers consumers quality gasoline designed to meet the needs of the variety of gasoline-powered vehicles in the US. BP is dedicated to producing fuels that help improve automotive performance, efficiency and emissions. BP provides customers with fuel for transportation and energy for heat and light.
>
> BP is the single, global brand formed by the combination of the former British Petroleum, Amoco Corp., Atlantic Richfield (ARCO) and Burmah Castrol.
>
> Every year, over 22 billion gallons of fuel are sold annually through the BP and ARCO branded retail outlets. Every day, BP serves 50 million gallons to our valued consumers via more than 10,000 BP-branded retail locations east of the Rockies, and another 1,500 on the West Coast via the ARCO brand.
>
> Complete list of BP and ARCO stations

BP's quality fuels are not only recognized in the marketplace but also within the industry: in the US, 9 out of 10 automobiles leave the manufacturing plant filled with BP gasoline. In addition, BP provides more than 3.5 billion gallons annually of gasoline and distillate products to unbranded customers, including High Volume Retailers (HVRs), trucking fleets, industrial users, auto and truck manufacturers, railroads and utilities.

Our family of brands includes Amoco, ampm, ARCO, BP and Castrol.

Fuel

BP is committed to providing consumers with high-quality fuels. To continue on this track, in 2008, BP introduced BP gasoline with Invigorate® as part of the company's largest product launch to date, which is available at stations east of the Rockies.

All three grades of new BP gasoline with Invigorate® have a unique formula that, with continuous use, helps clean critical engine parts and protects against deposits, corrosion and sludge formation. Results include cleaner engines that minimize exhaust emissions, experience smoother acceleration with less hesitation, and provide restored fuel economy.

For over a decade, BP's Amoco Ultimate® gasoline has been rated first in quality by drivers in a nationwide survey conducted by NPD.

18.     The same web site further states:

Quality premium fuel with the highest level of Invigorate.

Amoco Ultimate combines our highest-octane gas with our advanced cleaning additive, Invigorate, to help clean and protect your engine while you drive.

Restore Fuel Economy
Minimize Emissions
Prevent Corrosion
Embrace Quality
Restore Fuel Economy

The use of low-detergent fuels can lead to harmful engine deposits that reduce combustion efficiency and diminish your engine's performance. Fortunately, Amoco Ultimate with Invigorate exceeds the minimum detergent required by law.

As you continuously use Amoco Ultimate with Invigorate, its cleaning power can:

Help to keep a new engine virtually "like-new"
Help cut away engine deposits in older cars
Restore performance
Improve driveability
Help you get a few more miles per tank

Minimize Emissions

With continuous use in cars with dirty engines, the cleaning power of Amoco Ultimate with Invigorate helps remove carbonaceous deposits to help improve efficiency and combustion. This cleaning power helps to minimize the emissions from unburned hydrocarbons and nitrogen oxides (NOx, precursors to ground-level ozone).

In fleet tests, vehicles were driven on a regular fuel with minimum detergent until the engines were "dirty" (as measured by intake valve rating). Emissions were measured, and then the vehicles were driven exclusively on Amoco Ultimate with Invigorate. Subsequent measurements on emissions clearly showed the positive impact of Amoco Ultimate with Invigorate.

Prevent Corrosion

Corrosion occurs when moisture naturally accumulates on steel. And since most critical engine components are made of steel alloys, corrosion can lead to expensive repairs.

Fortunately, the corrosion inhibitor in Amoco Ultimate with Invigorate** can help prevent harmful corrosion before it causes costly damage.

19.  The same Web site also states:

BP Gasoline
with Invigorate®

Invigorate FAQ

Quality fuel that can help protect your engine.

What makes BP gasoline with Invigorate® better than low-detergent gasolines? With continuous use, BP gasoline with Invigorate helps clean and protect engines from deposits, sludge and corrosion.

An Ideal Mix
Sludge Protection
Prevent Corrosion
Clean Engine, Clean Air Quality
An ideal mix

Gasolines with low detergent can lead to harmful deposits on intake valves and fuel injectors. Fortunately, with continuous use, BP gasoline with Invigorate helps:

Clean away harmful deposits
Protect against the formation of new deposits
Restore fuel economy
Minimize exhaust emissions
Enable smoother acceleration with less hesitation
Improve your engine's performance

5

Sludge Protection

Sludge is a thick, dark substance formed by the reaction of combustion byproducts and engine oil.

It can clog oil passages
In extreme cases, it can lead to engine failure
Once it forms, it's difficult to remove
Several factors contribute to sludge, but the easiest one to control is your choice of gasoline. . . .

Quality

The BP Fuels guarantee is more than a statement.

In the unlikely event that you experience fuel-system trouble due to the use of Amoco Ultimate®, BP Silver (mid-grade), BP Regular or BP Diesel®, we'll reimburse you for the repairs. Simply call us at 1-800-333-3991 to report the problem. You'll also need to provide your fuel receipt and mechanic's repair bill. We'll review your claim, and any BP fuel-related repairs will be reimbursed to you.

20. Similar representations of high quality are made by defendants at the point of sale and in media advertising.

21. During August 2012 defendants sold large quantities of defective and contaminated gas in the Midwest.

22. The gas not only failed to have the characteristics described in defendants' advertising, but produced exactly the opposite effect in engines in which it was used.

23. On or about August 21, 2012, defendants issued the following statement on their Web site.

Release Date: 21 August 2012

BP STATEMENT

BP is alerting Northwest Indiana fuel distributors that the company is recalling unleaded regular gasoline that was shipped from the company's Whiting, Indiana fuel storage terminal between August 13th and 17th.

The company believes that fuel stored in a tank at the storage depot could cause hard starting, stalling and other drivability issues. The fuel may have been purchased by motorists patronizing BP and other retail outlets in Northwest Indiana during the past seven days.

BP is committed to fuel quality and guarantees every gallon of gasoline we sell.

6

>Any customer who's vehicle has experienced these symptoms during this period should contact BP's customer hotline at 1-800-333-3991 or by email at bpconsum@bp.com.
>
>The company is going through its shipping records and contacting Northwest Indiana customers who may have loaded tanker trucks at the storage terminal during this period and is replacing the contaminated fuel with fresh product.
>
>We would like to apologize for the inconvenience this has caused some of our customers.
>
>http://mybpstation.com/fuels/bp-fuels-guarantee/
>
>Further Information:
>Name: BP Fuels
>Email: uspress@bp.com

24.     On or about August 21, 2012, defendants issued the following statement on the same Web site:

>BP Update on Northwest Indiana Fuel Issue
>Release Date: 21 August 2012
>
>BP continues to take action to recall off-specification gasoline shipped to Northwest Indiana distributors last week and has established a process to work with customers whose cars have required repairs associated with the fuel.
>
>BP believes a 50,000 barrel batch of regular grade gasoline blended at BP's Whiting, Indiana gasoline storage terminal between August 13th and 17th contained a higher than normal level of polymeric residue and this residue can cause hard starting and other drivability issues. The fuel may have been purchased by motorists patronizing BP and other retail outlets in Northwest Indiana during the past seven days.
>
>BP is committed to fuel quality and guarantees every gallon of gasoline we sell. Any customer whose vehicle has experienced these symptoms during this period should contact BP's customer hotline at 1-800-333-3991 or bpconsum@bp.com.
>
>The company is going through its shipping records and contacting Northwest Indiana customers who may have loaded tanker trucks at the storage terminal during this period and is replacing the contaminated fuel with fresh product.
>
>We would like to apologize for the inconvenience this has caused some of our customers.
>
>http://mybpstation.com/fuels/bp-fuels-guarantee/
>
>Further Information:
>Name: BP Fuels
>Email: uspress@bp.com
>Recent updates

7

25. On or about August 22, 2012, defendants issued the following statement on the same Web site:

> BP Investigation Determines Scope of Stations Affected by Fuel Quality Issue
> Release Date: 22 August 2012
>
> BP believes approximately 200 retail outlets in Northwest Indiana and the Chicagoland area were supplied with off-specification regular-grade gasoline over the last seven days, along with 20 additional retail sites in the Milwaukee area that received off-specification premium gasoline.
>
> The company continues to go through its shipping records and is contacting retailers who may have loaded tanker trucks with the off-specification fuel and is replacing it with on-specification product.
>
> This fuel, sourced from BP's Whiting, Indiana and Milwaukee, Wisconsin gasoline storage terminals, contained a higher than normal level of polymeric residue, which can lead to hard starting and other drivability issues.
>
> BP has also established a second phone line for the processing of consumer claims in order to better assist those who believe their vehicle may have been harmed by using this fuel. Any consumer wishing to file a claim should save sales receipts, credit/debit card records and repair bills and should call 1-800-333-3991 or 1-800-599-9040 to speak to a claims representative. They can also access information and submit an online inquiry at www.bpresponse.com.
>
> To date, 7,000 consumers have contacted BP regarding this matter.
>
> BP stands by every gallon of gasoline we sell. We are committed to working with every affected BP consumer to remedy this situation. We will also cooperate with state regulators interested in the matter.
>
> Further Information:
> Name: BP Fuels
> Email: uspress@bp.com

26. On or about August 22, 2012, defendants issued the following statement on the same Web site:

> Background on Fuel Quality Issue
>
> What happened?
>
> BP has determined that a batch of fuel shipped from our Whiting, Indiana fuel storage terminal contained a higher than normal level of polymeric residue.
>
> This residue may cause hard starting and other drivability issues.
>
> What areas are affected?

8

> Unleaded regular and mid grade gas distributed to Northwest Indiana and Southeast Chicago from Aug. 13 to Aug. 20 may have been affected.
>
> A small quantity of premium fuel in the Milwaukee area sold between 10 p.m. Monday evening (Aug. 20) and 6:45 am Tuesday morning was also affected.
>
> Actions BP is taking
>
> We are identifying any retailers in Northwest Indiana, Southeast Chicago, or Milwaukee who may have received the off-specification fuel. We have asked them to suspend all sales of this product.
>
> We are now actively recovering gas from those affected service stations.
>
> In addition, we are confident that the fuel being distributed now from the fuel storage terminal in Whiting is suitable for use.
>
> We understand how important our consumers' vehicles are, and we stand by our commitment to our products.
>
> Therefore, we are establishing a claims process to reimburse our consumers for the cost of fuel, as well as for any repairs that may legitimately be associated with the off-specification product.
>
> We did receive a high volume of calls and some consumers may have experienced problems getting through. We have added staff to our call center and opened a dedicated claims processing center to expedite handling of these calls.
>
> We are working to contact consumers to begin processing all legitimate repair claims related to the fuel.
>
> BP's guarantee
>
> BP guarantees every gallon of gasoline that we sell, and we will work with each of our consumers and customers to remedy this situation.

27. On or about August 23, 2012, defendants issued the following statement on the Web site registered to BP p.l.c., and with respect to which the administrator is BP Corporation North America Inc.

> BP Identifies and Corrects Source of Northwest Indiana, Chicagoland and Milwaukee Fuel Quality Issue
>
> Release Date: 23 August 2012
>
> BP announced today that it has traced the source of the off-specification fuel to problems related to the alkylation unit at the company's Whiting, Indiana refinery. The refinery has made changes to operations at the plant to fix the problem and return fuels produced there back within normal specifications.

>The company also continues to systematically inspect and test the distribution system served by the refinery. BP has confirmed that regular gasoline supplied to gas stations in Northwest Indiana, Chicagoland and Milwaukee is back within normal specifications. Testing of this gasoline will continue to ensure quality.
>
>With regards to premium and midgrade sales, which make up less than 20 percent of the company's sales volume in the region, the company reported that fuel sold from the Milwaukee terminal is also back within normal specifications. As a precaution, the company has temporally halted distribution and sale of premium and midgrade gasoline in the Chicagoland area pending further testing.
>
>BP has established a dedicated claims facility to speed processing of consumer calls and claims. BP has begun paying claims and is following up with consumers who have contacted the company. Any consumer who purchased off-specification fuel wishing to file a claim should call 1-800-333-3991 or 1-800-599-9040 to speak to a claims representative. Consumers should save sales receipts, credit/debit card records and repair bills They can also access information and submit an online inquiry at www.bpresponse.com.
>
>BP sells more than 50 million gallons of gasoline in the U.S. every day and we stand by every gallon we sell. We are committed to working with every affected BP consumer to remedy this situation. We will also cooperate with state regulators interested in the matter.
>
>Further Information:
>Name: BP Fuels
>Email: uspress@bp.com

## CLASS ALLEGATIONS

28. Plaintiff brings this action pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and two subclasses.

29. The class consists of all persons (natural or artificial) who purchased BP Premium, Mid and Low Grade gasoline that originated from BP's Whiting, Indiana refinery between approximately August 12, 2012 and August 23, 2012, in Michigan, Indiana, Illinois, and Wisconsin.

30. Subclass A consists of class members whose cars suffered problems after using defendants' products.

31. Subclass B consists of class members who purchased fuel in Illinois.

32. All members of the class and subclasses suffered economic harm.

33. All members of Subclass A suffered property damage.

34. The members of the class and subclasses are so numerous that joinder of all members is impracticable. Each consists of thousands of persons.

35. There are questions of law and fact common to the members of the class and subclasses, which predominate over any questions that affect only individual class members.

36. The predominant common questions include:

    a. Whether the products sold by defendants were defective;

    b. Whether defendants failed to properly test the products;

    c. Whether defendants failed to warn of the dangers of their products;

    d. Whether defendants breached implied warranties;

    e. Whether defendants breached express warranties;

    f. Whether defendants engaged in unfair or deceptive acts or practices by selling defective gasoline.

37. Plaintiff's claims are typical of the claims of the class and subclass members. All are based on the same factual and legal theories.

38. Plaintiff will fairly and adequately represent the interests of the class members. They have retained counsel experienced in consumer class action litigation.

39. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

### COUNT I – BREACH OF IMPLIED WARRANTY; UNIFORM COMMERCIAL CODE AND MAGNUSON-MOSS ACT

40. Plaintiff incorporates paragraphs 1-39.

41. This claim is on behalf of the class and subclasses.

42. Under the Uniform Commercial Code ("UCC") – in force throughout the United States except in Louisiana and Puerto Rico – there is an implied warranty in the sale of goods by a merchant that the goods shall be merchantable. 810 ILCS 5/2-344; Burns Ind. Code Ann § 26-1-2-344.

43. Under UCC §2-344(2), "Goods to be merchantable must be at least such

as.... (c) are fit for the ordinary purposes for which such goods are used; and... (f) conform to the promises or affirmations of fact made on the container or label if any."

44. The gasoline sold by defendants was not fit for use as such, and did not conform to the promises or affirmations of fact made at the pump.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and subclasses and against defendants, for:

(1) Compensatory damages;

(2) Costs of suit, expenses and attorney's fees (pursuant to 15 U.S.C. §2310); and

(3) Such other or further relief as the Court deems proper.

### COUNT II – BREACH OF EXPRESS WARRANTY; UNIFORM COMMERCIAL CODE

45. Plaintiffs incorporate paragraphs 1-39.

46. This claim is on behalf of the class and subclasses.

47. Under UCC §2-343, in force throughout the United States except Louisiana and Puerto Rico, the representations in defendants' advertising and at the point of sale regarding the quality of their gasoline created an express warranty that the contents shall conform to the representations. 810 ILCS 5/2-343; Burns Ind. Code Ann § 26-1-2-343.

48. Defendants' representations became a part of the basis of the bargain.

49. Defendants breached those representations, as described above.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiff and the class and subclass, and against defendants, for:

(1) Compensatory damages;

(2) Costs of suit;

(3) Such other or further relief as the Court deems proper.

### COUNT III – VIOLATIONS OF ILLINOIS CONSUMER FRAUD ACT

50. Plaintiff incorporates paragraphs 1-39.

51. This claim is on behalf of subclass B.

52. Defendants engaged in unfair and deceptive acts and practices, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, by:

   a. Producing and selling gas that was defective or contaminated, and unfit for consumption;

   b. Representing that their gas was of high quality, when that was not the case;

   c. Selling fuel without properly testing it.

53. The unfair and deceptive actions of defendants were done in the course of retail business, trade and commerce, and had a deleterious impact on the public interest.

54. Plaintiff and others suffered damages as a result of defendants' actions.

55. The actions of defendants were taken willfully, knowingly, or in reckless disregard of the interests of consumers, thereby justifying the award of punitive damages.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and subclass B, and against defendants, for defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. and other applicable state laws, and award:

   (1) Compensatory damages;

   (2) Punitive damages;

   (3) Attorney's fees, litigation expenses, and costs of suit; and

   (4) Such other or further relief as the Court deems proper.

### COUNT IV – NEGLIGENCE

56. Plaintiff incorporates paragraphs 1-39.

57. This claim is on behalf of subclass A.

58. Defendants owed plaintiffs and other customers a duty of care to offer
13

products free from deleterious and harmful effects.

59. Defendants breached that duty of care by selling products that were harmful and deleterious:

    (a) without conducting adequate quality control and testing,

    (b) without using proper manufacturing and production practices.

60. Defendants' conduct was negligent, careless, or reckless.

61. As a direct and proximate result of defendants' conduct, plaintiff and the subclass members suffered property damage.

WHEREFORE, plaintiff request that the Court enter judgment in favor of plaintiffs and subclass A, and against defendants, for:

    (1) Compensatory damages;

    (2) Punitive damages;

    (3) Costs of suit; and

    (4) Such other or further relief as the Court deems proper.

## COUNT V – STRICT PRODUCTS LIABILITY

62. Plaintiff incorporates paragraphs 1-39.

63. This claim is on behalf of subclass A.

64. Plaintiff and the subclass members purchased fuel manufactured, distributed or sold by defendants.

65. The fuel was defective and inherently and unreasonably dangerous and unsafe for its intended use because it harmed the vehicles in which it was used.

66. The fuel failed to perform in the manner reasonably to be expected, in light of its nature and intended function.

67. As a direct and proximate cause of the unreasonably dangerous condition of the fuel, plaintiff and others suffered property damage and economic loss.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of

plaintiffs and subclass A, and against defendants, for:

      (1)    Compensatory damages;

      (1)    Punitive damages;

      (2)    Costs of suit; and

      (3)    Such other or further relief as the Court deems proper.

    s/Daniel A. Edelman
    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary A. Jacobs
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

    s/Daniel A. Edelman
    Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                  s/Daniel A. Edelman
                                  Daniel A. Edelman